FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| EDWARD PICHÉ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil No. 2006-79 |
| STOCKDALE HOLDINGS, LLC, d/b/a ) | |
| CAPTAIN NAUTICA (and a/k/a CAPTAIN ) | |
| NAUTICA, INC.), PARKER F. ) | |
| STOCKDALE, and SUSAN M. STOCKDALE, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

ATTORNEYS:

John E. Stout, Esq. and Julie German Evert, Esq.
St. Thomas, U.S.V.I.
    *For the plaintiff,*

Ruth Miller, Esq.
St. Thomas, U.S.V.I.
    *For the defendants.*

MEMORANDUM OPINION

GÓMEZ, C.J.

    Before the Court is the motion of the defendants, Stockdale

Holdings, LLC, d/b/a Captain Nautica ("Captain Nautica"), Parker

F. Stockdale, and Susan Stockdale (together, the "Stockdales")

for partial summary judgment against the plaintiff, Edward Piché

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 2

("Piché").  For the reasons stated below, the Court will grant
the motion.

## I.  FACTS

On May 19, 2004, Piché, his family, and a friend visited St.
Thomas, U.S. Virgin Islands.  They were passengers on a cruise
ship.  While in port in St. Thomas, Piché took a day trip on a
powerboat excursion operated by Captain Nautica.  The excursion
included a snorkeling tour.  On the morning of the excursion,
Piché met the vessel, known as the Ocean Rider, at the waterfront
in St. Thomas.  The passengers and crew assembled on the sidewalk
near the water.  A crew member passed around a document (the
"Release") to the passengers.  The document contained language
purporting to release Captain Nautica and its owners from
liability to passengers on the excursion, followed by multiple
blank signature lines.  Piché and eleven other passengers signed
the Release.  They then boarded the vessel and left the harbor.

On the way to the first scheduled stop on the excursion, the
vessel hit a wave.  Piché was propelled out of his seat and
injured.

Thereafter, Piché commenced this action against Captain
Nautica and its owners, the Stockdales.  He seeks damages
stemming from the injuries he sustained on May 19, 2004.  In his
first amended complaint (the "Complaint"), Piché alleges that the

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 3

defendants owed Piché an affirmative duty to exercise reasonable
care to protect him from dangerous conditions aboard the vessel.
He asserts that the defendants were negligent because, among
other things, they failed to properly warn of the hazards aboard
the vessel; failed to properly secure him in the vessel or
provide him with means to secure himself; failed to safely
maintain, operate, and otherwise control the vessel so that it
would be safe for passengers; and failed to provide adequate
training for the vessel's crew.  Piché also asserts a cause of
action based on the doctrine of *res ipsa loquitur,*[1] alleging that
the circumstances under which he was injured were such that his
injuries would not have been sustained but for the defendants'
negligence.  He further alleges that the defendants' conduct was
grossly negligent.  Additionally, Piché asserts claims for breach
of contract and breach of warranty to provide passengers with a
safe experience on a seaworthy vessel.

The defendants now seek summary judgment on Piché's claims
based on negligence, *res ipsa loquitor*, breach of contract, and
breach of warranty.

---

[1]  The term *res ipsa loquitur* is Latin for "the thing speaks
for itself." Black's Law Dictionary (8th ed. 2004).

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 4

## II.  DISCUSSION

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 ("Rule 56") if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3rd Cir. 1985). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002).

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 5

### III.  <u>ANALYSIS</u>

### A.   Admiralty Jurisdiction & Choice of Law

While the Piché's Complaint invokes diversity of citizenship as the basis for this Court's jurisdiction, admiralty jurisdiction may also apply in this case.[2]  None of the parties have raised the issue of admiralty jurisdiction.  However, the Court will consider the question *sua sponte* to determine whether it is obligated to apply federal maritime law to the substantive issues in this case. *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (determining whether admiralty jurisdiction existed even though the case was properly brought in diversity because "[w]ith admiralty jurisdiction comes the application of substantive admiralty law."); *Gibbs ex rel. Gibbs v. Carnival Cruise Lines,* 314 F.3d 125, 131 (3d. Cir. 2002) ("[I]f the case sounds in admiralty, it would be inappropriate to apply New Jersey law or any other state's law, instead of federal admiralty law.").

---

[2] "The district courts shall have original jurisdiction, exclusive of the courts of the States, of [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1)

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 6

"The initial step in the choice of law analysis is to determine whether this case 'sounds in admiralty.'" *Gibbs ex rel. Gibbs*, 314 F.3d at 131.

A claim falls within this Court's admiralty jurisdiction if it satisfies two elements: location and connection. *Jerome B. Grubart, Inc. v. Great Lakes Dredge Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). Under the location test, "the incident must have 'occurred on navigable water or . . . [be an] injury suffered on land [that] was caused by a vessel on navigable water.'" *Gibbs,* 314 F.3d at 131 (quoting *Grubart,* 513 U.S. at 534) (alteration in original). The connection test requires consideration of two sub-factors:

> A court, first, must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Grubart,* 513 U.S. at 534 (internal quotations omitted); *see also Gibbs,* 314 F.3d at 131 (listing the two issues raised by the connection test as separate elements of the admiralty jurisdiction inquiry).

Here, Piché was injured onboard the Ocean Rider while traveling on navigable water off the coast of St. Thomas. Thus, the location test is clearly satisfied. *See, e.g., Gibbs,* 314

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 7

F.3d at 132 (finding that the location test was met because "the injuries to [the plaintiff] transpired on the Carnival Cruise Lines vessel, The Destiny, which was traveling in navigable waters").

The connection test is also satisfied. First, the injuries sustained by paying passengers on vessels clearly have the potential to disrupt maritime commerce. *See, e.g., id.* (holding that the injuries incurred onboard a cruise ship satisfied the first sub-factor of the connection test because "ocean-going passenger vessels are clearly engaged in maritime commerce"). Second, the general character of the activity giving rise to the incidents in this case bears a substantial relationship to traditional maritime activity. *See Gibbs,* 314 F.3d at 132 (holding that negligence claims based on injuries to a passenger on a cruise ship bore a substantial relationship to traditional maritime activity).

This matter therefore falls within this Court's admiralty jurisdiction. Accordingly, the Court will apply federal maritime law instead of Virgin Islands law to Piché's claims. *See East River,* 476 U.S. at 864 ("Absent a relevant statute, the general maritime law, as developed by the judiciary, applies."); *Kretzer v. Hess Oil V.I. Corp.*, 218 F. Supp. 2d 724, 726-27 (D.V.I. 2002) ("[T]he extent to which state law may be used to remedy maritime

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 8

injuries is constrained by a so-called 'reverse-Erie' doctrine,

which requires that the substantive remedies afforded by the

States conform to governing federal maritime standards.").

**B.   Exculpatory Clause**

The defendants argue that they are entitled to summary

judgment on Piché's claims sounding in negligence, *res ipsa*

*loquitur,* breach of contract, and breach of warranty because they

are exempt from liability on such claims.   They rely primarily on

the Release that Piché signed before boarding the vessel.   That

Release, in relevant part, provided:

> Release and Assumption of Risk

> I acknowledge and agree by my signature below that I
> have read and am aware of the following terms and
> conditions relating to any activities that I may
> undertake on or from the vessel . . . "Ocean Rider".
> I declare that I am fit and well and not suffering
> from any medical condition, including pregnancy,
> which may preclude me from swimming, snorkeling, or
> boating activity.  Myself, my heirs, executors,
> administrators or assigns hereby hold harmless and
> release forever Stockdale Holdings, LLC dba Captain
> Nautica, the owners and operators of Stockdale
> Holdings, LLC dba Captain Nautica, the vessel . . .
> "Ocean Rider" and its successors, assigns, heirs,
> employees, and agents from all rights, claims,
> demands, damages, costs and causes of action of
> whatever kind or nature arising from any damages,
> liabilities, or injuries I may sustain, however
> caused, as a result of any such activities with
> Stockdale Holdings, LLC dba Captain Nautica.

(Ex. 1 to Mot. for Summ. J.)

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 9

"While exculpatory clauses-commonly referred to as red letter clauses-were traditionally disfavored by courts sitting in admiralty, such clauses are today routinely enforceable . . . so long as no overreaching is found." *La Esperanza de P.R., Inc. v. Perez y Cia. de Puerto Rico, Inc.,* 124 F.3d 10, 19 (1st Cir. 1997).  The rationale for upholding such clauses today is that "businessmen can bargain over which party is to bear the risk of damage and set the price accordingly, thus achieving a more rational distribution of the risk [and allocation of price] than the law would otherwise allow." *Id.*

Under admiralty law, "it is universally agreed that exculpatory clauses . . . must 'be clearly and unequivocally expressed.'" *Sander v. Alexander Richardson Investments,* 334 F.3d 712, 715 (8th Cir. 2004) (quoting *Randall v. Chevron U.S.A., Inc*., 13 F.3d 888, 905 (5th Cir. 1994)).  It is also clear that an exculpatory clause may not exempt a party from liability for gross negligence. *See Broadley v. Mashpee Neck Marina, Inc.,* 471 F.3d 272, 275 n.4 (1st Cir. 2006); *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1016 (9th Cir. 1999).  However, the law is not entirely clear with respect to whether exculpatory clauses purporting to totally release a party from ordinary negligence liability are enforceable under admiralty law.

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 10

In *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955), the Supreme Court of the United States invalidated an exculpatory clause releasing a party from all negligence liability on public policy grounds.  In that case, the plaintiff's oil barge collided with a bridge pier and sank while being towed up the Mississippi River by the defendant's towboat. The towage contract contained a provision that "the towing movement should be at the 'sole risk' of the barge." *Id.* at 86. The district and appellate courts held that such clause relieved the towboat owner of negligence liability.  The Supreme Court reversed.  It cited "a judicial rule, based on public policy, invalidating contracts releasing towers from all liability for their negligence." *Id.* at 90.  The Court explained:

> This rule is merely a particular application to the towage business of a general rule long used by courts and legislatures to prevent enforcement of release-from-negligence contracts in many relationships such as bailors and bailees, employers and employees, public service companies and their customers.

*Id.* at 90-91.  The Court further explained that the rationale behind the rule was "(1) to discourage negligence by making wrongdoers pay damages, and (2) to protect those in need of goods or services from being overreached by others who have power to drive hard bargains." *Id.* at 91.

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 11

*Bisso* may be read in at least two different ways.  As the United States Court of Appeals for the First Circuit has explained:

> *Bisso* could be read as laying down a flat rule, applicable to all cases, forbidding clauses that entirely exculpate a party for its own simple negligence.  However, *Bisso* focused on towing contracts and the special threat of monopolistic compulsions.  The Court also cited case law forbidding exculpatory clauses in common law relationships where unequal bargaining power is presumed (e.g., utilities and their customers).  Thus *Bisso* can easily be read as limited to relationships where unequal power is inherent or established.

*Broadley,* 471 F.3d at 274.  Since *Bisso,* there has been no clear consensus among circuit courts of appeal as to how *Bisso* should be read, and the United States Court of Appeals for the Third Circuit has not addressed the issue.

The United States Court of Appeals for the Eleventh Circuit has apparently adopted the former interpretation of *Bisso*.  It holds that, under admiralty law, an exculpatory clause "may not absolve the [party] of all liability and the liability risk must still provide a deterrent to negligence." *See Diesel "Repower," Inc. v. Islander Investments, Ltd.,* 271 F.3d 1318, 1324 (11th Cir. 2001); *see also, e.g., Edward Leasing Corp. v. Uhlig & Assocs., Inc.,* 785 F.2d 877 (11th Cir. 1986) (refusing to enforce a contract that "d[id] not deter negligence on the part of the

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 12

[ship] repairer, but afford[ed] a false sense of protection to
the ship owner, contrary to the public policy as set forth in
*Bisso*").

In contrast, the United States Courts of Appeals for the
First, Eighth, and Ninth Circuit have distinguished *Bisso* and
found that exculpatory clauses that release parties from *all*
negligence liability may be enforceable under certain
circumstances outside the towing context.[3] *See, e.g., Broadley v.
Mashpee Neck Marina, Inc.,* 471 F.3d 272, 274 (1st Cir. 2006);
*Sander v. Alexander Richardson Investments,* 334 F.3d 712, 717
(8th Cir. 2004); *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d
1009, 1014 (9th Cir. 1999).  These courts hold that exculpatory
clauses releasing parties of all liability for ordinary
negligence may be enforceable so long as the circumstances of the
case do not involve a monopoly or parties of unequal bargaining
power. *See id.*  They reason that, "[w]here the peculiarities of
those types of relationships do not justify application of the
doctrine [set forth in *Bisso*], . . . the strong public policies

---

[3]  Additionally, the United States Court of Appeal for the
Fifth Circuit has upheld exculpatory clauses in admiralty cases
that limited but did not entirely preclude liability for
negligence. *See Todd Shipyards Corp. v. Turbine Service, Inc.*,
674 F.2d 401, 410 (5th Cir. 1982); *Alcoa S.S. Co. v. Charles
Ferran & Co.,* 383 F.2d 46, 55 (5th Cir. 1967).  However, these
cases are distinguishable from the case at bar, in which the
Release purports to absolve the defendants from all liability.

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 13

of recognizing parties' liberty to contract and enforcing

contracts as written" support enforcing exculpatory clauses.

*Sander,* 334 F.3d at 717.

    This Court agrees that "an admiralty rule, flatly preventing

parties from contracting away claims for simple negligence in all

circumstances, would be surprising." *Broadley Marina,* 471 F.3d at

274.  Accordingly, this Court holds that where the relationship

between the parties does not involve an inherent risk of

overreaching, an exculpatory clause may validly exempt a party

from all liability for ordinary negligence. *See generally*

*Broadley,* 471 F.3d at 274; *Sander,* 334 F.3d at 717; *Royal Ins.*

*Co. of Am.*, 194 F.3d at 1014.

    Here, there was no necessary or unavoidable water carriage

involved such that the spectre of overreaching by a party was

likely or inherent in their dealings.  Indeed, unlike towing,

bailment, employment, or public service contracts, the services

provided by the defendant Captain Nautica involve a voluntary

water-based excursion designed to entertain.  Therefore, the

Release executed by Piché was of a species that is not

necessarily contrary to public policy.

    While not *per se* unenforceable, to be valid, the Release

must: (1) clearly and unequivocally indicate the intentions of

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 14

the parties, and (2) not be inflicted by a monopoly, or a party with excessive bargaining power. *See id.*

A maritime contract "should be read as a whole and its words given their plain meaning unless the provision is ambiguous." *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984); *see also Sander*, 334 F.3d at 716 ("Even in maritime law, we construe contracts by giving their terms their normal and everyday meaning.  We look to the contract as a whole to determine whether it unambiguously states the parties' intentions.").  In addition, exculpatory clauses "should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties . . . ." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981).

In *Delponte v. Coral World V.I., Inc.,* 233 Fed. Appx. 178 (3d Cir. May 16, 2007), the United States Court of Appeals for the Third Circuit examined an exculpatory clause with language as broad as that in the Captain Nautica Release.  In that case, the plaintiff was injured while participating in a recreational Sea Trek,[4] operated by the defendant, Coral World.  The plaintiff

---

[4]    "Sea Trek participants wear a helmet with an attached breathing tube, descend a ladder to the ocean floor, and walk underwater to examine the sea habitat." *Delponte,* 233 Fed. Appx. at 180.

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 15

sued Coral World for negligence.  Coral World argued that the
plaintiff's negligence suit was barred by an exculpatory clause
in a waiver form signed by the plaintiff prior to participating
in the Sea Trek.  The waiver contained language specifically
"releasing Coral World for claims for 'personal injury . . . due
to negligence[.]'" *Id.* at 180.  The waiver further stated: "I . .
. release . . . Coral World . . . from any and all liability for
. . . injury . . . to me . . . resulting from the . . . use of
this equipment and for any claim based upon breach of warranty,
contract, *or other legal theory* accepting myself the full
responsibility for any and all such . . . injury . . . which may
result[.]" *Id.* at 181.  The Third Circuit held that the intent of
the waiver was to release Coral World from liability for simple
negligence. *Id.* at 180-81.

    The intent of the parties to the Release here is similarly
clear.  Indeed, there is only one way to interpret the Release's
clause exempting the defendants of liability "from all . . .
causes of action of whatever kind or nature."  That phrase
clearly and unequivocally indicates that the parties intended to
shift the risk of loss to Piché and indemnify the defendants
against Piché's personal injury claims under any theory of
recovery.  Such broad language unambiguously evidences the
parties' intent to exempt the defendants from liability for

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 16

Piché's claims based on negligence, *res ipsa loquitur,* breach of
contract, and breach of warranty. *See, e.g., Delponte,* 233 Fed.
Appx. at 181 (holding that a waiver containing similar language
"unambiguously release[d] Coral World from liability")
(unpublished); *Sander,* 334 F.3d at 716 ("The term 'any and all' .
. . is all-encompassing and leaves little doubt as to the
liability from which the boat owners released the Yacht Club.   In
short, 'all' means all." (quotation omitted)); *Royal Ins. Co.*,
194 F.3d at 1014 (holding that a clause releasing the defendant
from liability for "all claims, losses, damages, liabilities or
expenses . . . resulting directly or indirectly from the
performance of this Agreement" clearly exempted the defendant
from liability for breach of warranty, breach of contract, and
negligence).[5]

---

[5]   The Court is mindful that in *Broadley v. Mashpee Neck
Marina, Inc.,* 471 F.3d 272 (1st Cir. 2006), the First Circuit
regarded broad release language as literally encompassing all
types of liability and therefore unenforceable because it could
release gross negligence claims.   However, this Court is not
convinced that an exculpatory clause must explicitly limit its
reach to claims not based on gross negligence, recklessness, or
intentional acts, in order to be enforceable.   The Court is also
not convinced that the enforceability of an exculpatory clause
should turn on whether it expressly mentions negligence liability
by name. *See, e.g., In re Incident Aboard the D/B Ocean King,* 758
F.2d 1063, 1068-71 (5th Cir. 1985) (noting that the phrase "the
entire cost and full liability" was sufficient to indemnify the
drafter against negligence claims despite lacking specific
language to that effect).

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 17

Next, the Court must determine whether the defendants exerted excessive bargaining power over Piché with respect to the signing of the Release.[6]  With respect to the parties' bargaining power,

> [i]t is not enough to assert that one party was less sophisticated than the other.  There must be some evidence that the party holding the superior bargaining power exerted that power in overreaching the less sophisticated party by, for example, engaging in fraud or coercion or by insisting on an unconscionable clause.

*Sander,* 334 F.3d at 720.

Here, the exculpatory clause signed by Piché was part of a form Release given to all of the passengers on the excursion.  However, a contract is not invalid under admiralty law simply because it is a form contract. *See id.*  Piché contends that the Release is formatted in such a way as to mislead him into believing that it was merely a sign-in sheet for the excursion.  He points out that the document is titled "CAPTAIN NAUTICA EXPEDITION LOG," and contains several spaces for passengers to sign their names.  However, the undisputed evidence in the record reveals that the Release also has a header, which states "Release and Assumption of Risk."  Immediately following the header is

---

[6]  There is no allegation or evidence showing that Captain Nautica operated a monopoly on power boat excursions in the St. Thomas area.

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 18

text that does precisely what the header indicates.  That is, it provides that the signatory agrees to "hold harmless and release forever" the defendants from liability resulting from activities with Captain Nautica.

Piché also states that he never read the Release.  However, Piché does not dispute that he was given an opportunity to read the Release. *Cf. Delponte,* 233 Fed. Appx. at 180-81 (enforcing an exculpatory clause, and noting that "[w]hether [the plaintiff] read it or not, it was certainly provided for him to read").  Piché also does not dispute that he did in fact sign the Release without objection.  Moreover, the undisputed evidence in the record shows that the Captain Nautica excursion was not the only snorkeling excursion in the area, and that Piché chose Captain Nautica from among other options. (*See* Ann Marie Piché Dep. 20-21, July 22, 2008) ("They just suggested a couple different snorkeling excursions.  And then I went down to the excursion desk and just randomly picked that one.").

Under these circumstances, the Court finds that Captain Nautica did not exert excessive bargaining power over Piché. *See, e.g., Sander,* 334 F.3d at 720 (reversing the trial court's finding of unequal bargaining power because, although the exculpatory clause was contained in a form contract presented to an individual boat owner by a corporate marina, there was

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 19

insufficient evidence in the record to show that the marina exerted excessive power over the individual); *Royal Ins. Co. of Am.*, 194 F.3d at 1014 (holding that the defendant's conduct could not be characterized as overreaching where the plaintiff assented without complaint to the agreement containing the exculpatory clause); *Outek Caribbean Distribs., Inc. v. Echo, Inc*., 206 F. Supp. 2d 263, 268 (D.P.R. 2002) (rejecting a claim of unequal bargaining power although one party refused to negotiate certain terms because "[u]nder Outek's theory, any individual that had signed a form contract with a large corporation could subsequently invalidate any contract clauses that he considered to be unpleasant simply by claiming the existence of unequal bargaining power").

    In sum, the defendants have satisfied their burden of showing that there are no material issues for trial with respect to the fact that the Release clearly and unequivocally indicates the parties' intention to exempt the defendants from liability, and that it was not inflicted by a monopoly or a party with excessive bargaining power.  Piché has failed to present sufficient evidence to show otherwise.  Accordingly, the Court will enforce the Release to the extent it exempts the defendants

*Piché v. Stockdale Holdings, LLC, d/b/a Captain Nautica, et al.*
Civil No. 2006-79
Memorandum Opinion
Page 20

from liability for Piché's claims based on negligence, *res ipsa loquitur,* breach of contract, and breach of warranty.[7]

### IV.   <u>CONCLUSION</u>

For the reasons given above, the Court will grant the defendants' motion for partial summary judgment.   An appropriate Order follows.

S\_____
                    **CURTIS V. GÓMEZ**
                    **Chief Judge**

---

[7]   Piché argues that the Release is invalid under the Plain Language Act, title 12A, section 251, *et seq.* of the Virgin Islands Code.   The Act applies to "consumer contracts," which include contracts for "services . . . obtained for personal . . . purposes." V.I. CODE ANN. tit. 12A, § 251a(a)(6).   However, the type of service provided by Captain Nautica in this case – entertainment – is not a personal service contemplated by the Act. *See Delponte v. Coral World V.I., Inc.,* 233 Fed. Appx. 178, 180 (3d Cir. May 16, 2007) (holding that entertainment was not a personal service under the Plain Language Act) (unpublished). Additionally, as the Third Circuit has explained, "the Act contains its own cause of action, permitting consumers who are harmed by a non-complying consumer contract to sue for damages." *Id*.   Here, however, Piché has not alleged any cause of action under the Plain Language Act.   Finally, the Plain Language Act provides that a violation of its provisions "shall not render any consumer contract void or voidable . . . unless enforcement of the contract . . . would be unconscionable." 12A V.I.C. § 260. Because Piché has not shown any basis for finding the Release in this case unconscionable, it would be enforceable even if it did violate the Plain Language Act. *See, e.g., Delponte,* 233 Fed. Appx. at 180 ("Given the absence of any basis for finding unconscionability, DelPonte's release and assumption of the risk contract would thus be enforceable even if it did violate the Act.").